[Cite as *Timoneri v. NorthSteppe Realty, Inc.*, 2016-Ohio-5901.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Rachel Timoneri, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 15AP-618 |
| v. | : | (M.C. No. 2014 CVF 30979) |
| NorthSteppe Realty, Inc., | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 20, 2016

**On brief:** *Campinha Bacote LLC*, and *Avonte D. Campinha-Bacote*, for appellee. **Argued:** *Avonte D. Campinha-Bacote*.

**On brief:** *Graff & McGovern, LPA, Douglas E. Graff* and *Levi J. Tkach*, for appellant. **Argued:** *Levi J. Tkach*.

APPEAL from the Franklin County Municipal Court

KLATT, J.

{¶ 1} Defendant-appellant, NorthSteppe Realty, Inc. ("NorthSteppe"), appeals a judgment of the Franklin County Municipal Court in favor of plaintiff-appellee, Rachel Timoneri. For the following reasons, we affirm that judgment.

{¶ 2} On or about March 2, 2012, Timoneri and Jessica Steible executed a lease agreement to rent an apartment near the Ohio State University from NorthSteppe. The lease required a $695 security deposit, which Timoneri and Steible paid to NorthSteppe.

{¶ 3} Pursuant to the terms of the lease agreement, the lease term began on August 15, 2012 and ended July 31, 2013. Timoneri and Steible moved into the apartment on or about August 15, 2012.

{¶ 4} On or about January 8, 2013, Timoneri and Steible executed a lease renewal agreement with NorthSteppe. Under that agreement, the lease term began on August 1, 2013 and ended July 15, 2014.

{¶ 5} On the same day Timoneri and Steible executed the lease renewal agreement, they also signed a notice-of-tenant-replacement form. By completing that form, Timoneri and Steible gave permission for a new tenant, Colleen Frank, to replace Timoneri on the lease renewal agreement. The pre-printed section of the form stated:

> This change shall take place beginning ____ (date) for the remainder of the lease term. Prior to any changes taking place, both current and future tenant(s) understand that the new tenant(s) must fill out new applications and execute any necessary agreements with the Landlord. The landlord has full permission to execute a new lease contract with the new tenant(s). Landlord reserves the right to deny any of these changes from taking place.
>
> Please list any notes to Landlord regarding last month's rent and/or security deposit information:
>
> _____

(Def.'s Ex. 1.)

{¶ 6} In the blank provided for the date on which Frank would replace Timoneri, "8/1/13," the first day of the renewed lease term, is handwritten. *Id.* In the space to provide notes to NorthSteppe regarding the last month's rent and/or the security deposit, the following text is handwritten:

> Rachel's security deposit can be sent to:
> 1336 Indian Pointe
> Willoughby, OH 44094
>
> _____
>
> Colleen [Frank] will pay Rachel [Timoneri] for deposit

*Id.*

{¶ 7}   NorthSteppe approved Frank as a new tenant, and Frank replaced Timoneri on the lease renewal agreement.  Timoneri moved out of the apartment on July 28, 2013, and Frank then moved into the apartment.

{¶ 8}   Shortly after Timoneri vacated the apartment, Frank told Timoneri that she planned to pay her half of the security deposit to NorthSteppe, not Timoneri.  Frank then sent a $350 check dated September 13, 2013 to NorthSteppe.  In the memo section of the check, Frank wrote, "**SECURITY DEPOSIT**."  (Pl.'s Ex. C.)

{¶ 9}   Upon learning that Frank intended to pay NorthSteppe her half of the security deposit, Timoneri turned to NorthSteppe for relief.  Timoneri asked NorthSteppe to return to her the portion of the security deposit she had paid, i.e., $347.50. NorthSteppe requested that she complete a form with her forwarding address.  Timoneri complied and hand delivered the form to NorthSteppe's office.  When Timoneri did not receive reimbursement from NorthSteppe, she contacted NorthSteppe again. A NorthSteppe employee told Timoneri that she could not help her.

{¶ 10} The lease renewal agreement terminated on July 15, 2014.  On or about August 4, 2014, Timoneri sent NorthSteppe a letter demanding the return of the portion of the security deposit that she had paid.  According to NorthSteppe, on September 3, 2014, it drafted a check for $347.50 payable to Timoneri.  Although NorthSteppe indicated to Timoneri that it would mail the check to her, Timoneri did not receive that check.  NorthSteppe then drafted another check for $347.50 and held that check at its office for Timoneri to pick up.  Timoneri did not retrieve the check.

{¶ 11} On September 19, 2014, Timoneri filed suit against NorthSteppe asserting claims for breach of contract, unjust enrichment, and conversion.  By all of these claims, Timoneri sought a refund of her portion of the security deposit.  Timoneri also requested damages under R.C. 5321.16(C) and reasonable attorney fees.  NorthSteppe answered the complaint and denied all liability.

{¶ 12} Both parties attended mediation.  Although the parties failed to reach a settlement, they agreed to joint stipulations of fact.  In the joint stipulations, the parties delineated the majority of the facts set forth above.

{¶ 13} NorthSteppe moved for summary judgment, and Timoneri responded with a memorandum in opposition.  The trial court denied NorthSteppe's motion.

{¶ 14} The parties tried their case in a bench trial.  At the conclusion of trial, the trial court orally granted judgment for Timoneri.  The parties then presented evidence regarding the reasonableness of the attorney fees that Timoneri had incurred in pursuing her action.

{¶ 15} In a judgment entry dated June 1, 2015, the trial court rendered judgment in favor of Timoneri and awarded her the $347.50 wrongfully withheld from her, $347.50 in damages, and $10,505 in attorney fees.  NorthSteppe now appeals that judgment, and it assigns the following errors:

> [1.] The lower [c]ourt erred when it denied NorthSteppe['s] Motion for Summary Judgment and found NorthSteppe failed to comply with the statutory requirements for landlords under R.C. 5321.16.
>
> [2.] The lower [court] abused its discretion when it accepted Ms. Timoneri's impeached testimony.
>
> [3.] The low[er] court erred [in] failing to apply the lo[de]star method when calculating reasonable attorney's fees and failing to provide adequate reasoning for its award of fees.

{¶ 16} By its first assignment of error, NorthSteppe first argues that the trial court erred in denying its motion for summary judgment.  Second, NorthSteppe argues that the trial court erred in entering final judgment for Timoneri based on its finding that NorthSteppe violated R.C. 5321.16(B).  We disagree with both of NorthSteppe's arguments.

{¶ 17} This appeal turns on the meaning and application of R.C. 5321.16.  That statute is part of the Ohio Landlord-Tenant Act, which "codifies the law of this state regarding rental agreements for residential premises, and governs the rights and duties of both landlords and tenants."  *Vardeman v. Llewellyn*, 17 Ohio St.3d 24, 26 (1985).  In relevant part, R.C. 5321.16 provides:

> (B)  Upon termination of the rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with section 5321.05 of the Revised Code or the rental agreement.  Any deduction from the security deposit shall be itemized and identified by the landlord in a written notice delivered to the tenant

together with the amount due, within thirty days after termination of the rental agreement and delivery of possession. The tenant shall provide the landlord in writing with a forwarding or new address to which the written notice and amount due from the landlord may be sent. If the tenant fails to provide the landlord with the forwarding or new address as required, the tenant shall not be entitled to damages or attorneys fees under division (C) of this section.

(C) If the landlord fails to comply with division (B) of this section, the tenant may recover the property and money due to him, together with damages in an amount equal to the amount wrongfully withheld, and reasonable attorneys fees.

{¶ 18} R.C. 5321.16(B) imposes two duties on landlords. First, landlords have a duty to itemize and identify any deductions they make from a security deposit in a written notice. Second, landlords have a duty to deliver to the tenant the written notice, along with the amount due from the security deposit, within 30 days after termination of the lease and delivery of possession of the leased premises to the landlord.

{¶ 19} R.C. 5321.16(C) imposes a penalty on noncomplying landlords who wrongfully withhold any or all of the security deposit from the tenant. *Smith v. Padgett*, 32 Ohio St.3d 344, 349 (1987). Such a landlord "is liable for damages equal to twice the amount wrongfully withheld and for reasonable attorney fees." *Id.* at paragraph three of the syllabus. However, a landlord is only liable for damages and reasonable attorney fees if the tenant provides it with a forwarding or new address. R.C. 5321.16(B).

{¶ 20} In its motion for summary judgment, NorthSteppe asserted two arguments in support of its contention that it was not liable for a violation of R.C. 5321.16(B). NorthSteppe first argued that the notation on the notice-of-tenant-replacement form that "Colleen [Frank] will pay Rachel [Timoneri] for deposit" created a contract in which Frank agreed to pay $347.50—half of the security deposit—to Timoneri. (Def.'s Ex. 1.) This contract, argued NorthSteppe, relieved it of its obligation under R.C. 5321.16(B) to reimburse Timoneri for the amount she paid toward the security deposit. NorthSteppe asserted that Timoneri could only recover her half of the security deposit through a claim for breach of contract against Frank, and not a claim for violation of R.C. 5321.16(B) against NorthSteppe.

{¶ 21} Second, NorthSteppe argued that the evidence did not establish that it violated R.C. 5321.16(B), and thus, no genuine issue of material fact remained as to its lack of culpability under that division. To support this argument, NorthSteppe asserted:

> NorthSteppe Realty, Inc., has no obligation to return security deposits to any current or former tenants until "termination of the rental agreement." R.C. 5321.16(B). Here, Ms. Timoneri, [sic] signed a Lease Renewal Agreement. * * * The term of Ms. Timoneri's lease ran until July 15, 2014. The fact that Ms. Timoneri vacated the unit prior to the expiration of the lease agreement did not accelerate NorthSteppe Realty, Inc.'s obligation to reconcile the security deposit, as the Lease remained active through the other tenants. Because Ms. Timoneri's roommate and co-signer on the lease retained the unit, the Lease Agreement continued in effect for purposes of R.C. 5321.16(B).

(Mar. 16, 2015 Def.'s Mot. for Summ. Jgmt. at 6.)

{¶ 22} Timoneri filed a memorandum in opposition to NorthSteppe's motion for summary judgment. Timoneri did not directly refute NorthSteppe's first argument. Timoneri instead concentrated her response on NorthSteppe's second argument. In relevant part, Timoneri pointed out that NorthSteppe had conceded that the lease renewal agreement terminated on July 15, 2014. Timoneri argued that R.C. 5321.16(B) obligated NorthSteppe to refund Timoneri's portion of the security deposit within 30 days of that termination date. Timoneri attached to her memorandum in opposition an affidavit, wherein she repeated the stipulated fact that, "[t]o date, [she had] not received [her] security deposit back." (Timoneri Aff. at ¶ 7.) Based on this evidence, Timoneri maintained that NorthSteppe violated R.C. 5321.16(B).

{¶ 23} The trial court rejected both of NorthSteppe's arguments, and it denied NorthSteppe's motion for summary judgment. With regard to NorthSteppe's first argument, the trial court concluded that the agreement between Frank and Timoneri did not obviate NorthSteppe's obligations under R.C. 5321.16(B). With regard to the second argument, the trial court found that the evidence actually showed that NorthSteppe had failed to comply with its statutory obligation to timely refund Timoneri's security deposit.

{¶ 24} Before considering whether the trial court erred in denying NorthSteppe's motion for summary judgment, we must address whether that error is now moot or harmless. Ordinarily, "the denial of a motion for summary judgment is not a point of

consideration in an appeal from a final judgment entered following a trial on the merits." *Continental Ins. Co. v. Whittington*, 71 Ohio St.3d 150, 156 (1994). If a trial court denies summary judgment due to the existence of a genuine issue of material fact and the non-moving party then prevails at trial, any error in denying the motion for summary judgment is moot or harmless. *Id.* at 155-56. Any error in the trial court's evaluation of the evidence at the summary judgment stage becomes moot or harmless when a full and complete development of the facts at trial—as opposed to the limited factual record elicited through discovery—entitles the non-moving party to judgment. *Id.* To allow a summary judgment decision based on less evidence to prevail over a verdict reached on more evidence would defeat the fundamental purpose of judicial inquiry. *Id.* at 157.

{¶ 25} However, if a trial court denies a motion for summary judgment on legal grounds, the alleged error in that ruling is not rendered moot or harmless by a subsequent trial on the merits. *Id.* at 158. An appellate court, therefore, may review a denial of a motion seeking summary judgment on a pure question of law regardless of the non-moving party's success at trial. *Cappella III LLC v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746, ¶ 14 (10th Dist.)

{¶ 26} Here, NorthSteppe first argued on summary judgment that Frank and Timoneri's agreement excused NorthSteppe from complying with R.C. 5321.16(B). The resolution of this argument turns on our interpretation of provisions of the Ohio Landlord-Tenant Act. Statutory interpretation presents a legal issue for a court to resolve. *Independence v. Office of Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, ¶ 18. Consequently, NorthSteppe's first argument raises a purely legal question. Because the verdict in Timoneri's favor does not moot purely legal questions, we will review NorthSteppe's first argument on appeal.

{¶ 27} NorthSteppe's second argument is factual rather than legal. Thus, at first glance, the nature of the second argument would render it moot under *Whittington*. We, however, must engage in a deeper analysis because the trial court's resolution of NorthSteppe's second argument differs from the *Whittington* trial court's reasoning for its ruling. Rather than find that a genuine issue of material fact precluded summary judgment, as in *Whittington*, the trial court here denied NorthSteppe summary judgment

because the evidence unequivocally established NorthSteppe's liability.[1]  We find that this is a distinction without a difference.  The rationale behind the *Whittington* holding applies equally to the case at bar.  Regardless of how a trial court evaluates the evidence on summary judgment, we cannot reverse a verdict based on more evidence due to an alleged error in a summary judgment denial based on less evidence.  We, therefore, will not review on appeal NorthSteppe's second argument.  The subsequent verdict in Timoneri's favor rendered the error alleged in that argument moot or harmless.

{¶ 28}    A trial court will grant summary judgment under Civ.R. 56 when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.  *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29.  Appellate review of a trial court's ruling on a motion for summary judgment is de novo.  *Hudson* at ¶ 29.  This means that an appellate court conducts an independent review, without deference to the trial court's determination.  *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 29} As we stated above, R.C. 5321.16(B) imposes two duties on landlords. First, landlords have a duty to itemize and identify any deductions they make from a security deposit in a written notice.  Second, landlords have a duty to deliver to the tenant the written notice, along with the amount due from the security deposit, within 30 days after termination of the lease and delivery of possession of the leased premises to the landlord.

{¶ 30} Here, NorthSteppe contends that the agreement between Frank and Timoneri relieved it of its duties under R.C. 5321.16(B).  We reject this contention because it contravenes the Ohio Landlord-Tenant Act.

{¶ 31} R.C. 5321.16(B) states that landlords "shall" provide tenants with the written notice of deductions and the amount due from the security deposit.  To adopt

---

[1] The trial court did not grant summary judgment to Timoneri after making this finding because Timoneri did not move for summary judgment.  Thus, the case proceeded to trial.

NorthSteppe's contention, we would have to conclude that, as used in R.C. 5321.16(B), the word "shall" does not impose mandatory duties on landlords. However, "use of the word 'shall' in a statute or rule connotes a mandatory obligation unless other language evidences a clear and unequivocal intent to the contrary." *State ex rel. Cincinnati Enquirer v. Lyons*, 140 Ohio St.3d 7, 2014-Ohio-2354, ¶ 28. Our review of the Ohio Landlord-Tenant Act reveals no language that would render the requirements of R.C. 5321.16(B) less than mandatory.

{¶ 32} Moreover, no agreement can relieve a landlord of the mandatory duties imposed by R.C. 5321.16(B). Pursuant to R.C. 5321.13(A), "[n]o provision of [the Ohio Landlord-Tenant Act] may be modified or waived by any oral or written agreement except as provided in division (F) of this section." R.C. 5321.13(F) does not apply in this case. Consequently, we conclude that the agreement between Frank and Timoneri did not permit NorthSteppe to dodge the mandatory duties imposed on it by R.C. 5321.16(B).

{¶ 33} In arguing to the contrary, NorthSteppe asserts that R.C. 5321.06 allows an original tenant and a replacement tenant to enter into an agreement that exempts the landlord from complying with R.C. 5321.16(B). This argument misreads R.C. 5321.06. That statute states that "[a] landlord and a tenant may include in a rental agreement any terms and conditions * * * that are not inconsistent with or prohibited by Chapter 5321. of the Revised Code or any other rule of law." R.C. 5321.06, therefore, pertains solely to agreements between landlords and tenants, and not, as NorthSteppe asserts, agreements between two tenants. Moreover, R.C. 5321.06 precludes, rather than facilitates, a landlord's avoidance of its statutory obligations under R.C. 5321.16(B).

{¶ 34} Given the circumstances in the case at bar, we find NorthSteppe's attempt to escape the mandate of R.C. 5321.16(B) particularly egregious. Based on the undisputed facts, NorthSteppe collected "half" of the security deposit, i.e., $347.50, from three tenants.[2] After the lease renewal agreement terminated and NorthSteppe resumed possession of the apartment, NorthSteppe failed to deliver to Timoneri her portion of the security deposit. If we ruled as NorthSteppe wishes, NorthSteppe would receive Timoneri's $347.50 payment as a windfall. Consequently, neither law nor equity support NorthSteppe's argument.

---

[2] Technically, Frank paid NorthSteppe $350, not $347.50, for her portion of the security deposit.

{¶ 35} In sum, we find that the trial court did not err in rejecting NorthSteppe's argument that the agreement between Frank and Timoneri excused it from its responsibilities under R.C. 5321.16(B). The trial court, therefore, did not err in denying NorthSteppe summary judgment.

{¶ 36} We next turn to NorthSteppe's argument that the trial court erred in entering a verdict in favor of Timoneri based on its finding that NorthSteppe violated R.C. 5321.16(B). NorthSteppe does not specify whether it is challenging that verdict based on the sufficiency of the evidence or the manifest weight of the evidence. Our only clue regarding the type of challenge NorthSteppe asserts is NorthSteppe's statement that the trial court "erred as a matter of law" in finding a violation of R.C. 5321.16(B) "following trial and the presentation of additional evidence by both sides." (Appellant's Brief at 17-18; Reply Brief at 6-7.) A challenge to the sufficiency of the evidence raises a question of law, while a challenge based on the manifest weight of the evidence raises a question of fact. *State v. Thompkins*, 78 Ohio St.3d 380, 386-87 (1997). Because NorthSteppe contends that the trial court erred as a matter of law, we conclude that it challenges the sufficiency of the evidence.

{¶ 37} In adjudging the sufficiency of evidence, a court must determine " 'whether the case may go to [a finder of fact] or whether the evidence is legally sufficient to support the [judgment] as a matter of law.' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11, quoting *Thompkins* at 386; *accord Lubanovich v. McGlocklin*, 9th Dist. No. 12CA0090-M, 2014-Ohio-2459, ¶ 8 ("When a defendant argues that the judgment in a civil case is supported by insufficient evidence, [a court of appeals] must determine whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable trier of fact could find in favor of the plaintiff."); *Brown v. Dept. of Rehab. & Corr.*, 10th Dist. No. 13AP-804, 2014-Ohio-1810, ¶ 18 ("In reviewing the sufficiency of the evidence in a civil case, a court of appeals must determine whether the judgment could reasonably be reached from the evidence."). In essence, a court's review of the sufficiency of the evidence tests the evidence's adequacy. *Eastley* at ¶ 11.

{¶ 38} The first question we must address is whether sufficient evidence established that NorthSteppe failed to "deliver" to Timoneri her portion of the security deposit "within thirty days after termination of the rental agreement and delivery of

possession."   R.C.   5321.16(B).   NorthSteppe does not contest that the lease renewal agreement terminated and it reassumed possession of the apartment on July 15, 2014. Thus, NorthSteppe had a duty to deliver Timoneri's portion of the security deposit to her by August 14, 2014.   The evidence, however, shows that NorthSteppe did not take any action to return Timoneri's security deposit to her until September 3, 2014, when it drafted a $347.50 check to Timoneri.   NorthSteppe, therefore, did not deliver Timoneri's portion of the security deposit to her within the 30-day period after termination of the lease and NorthSteppe's resumption of possession.

{¶ 39} Next, we must review NorthSteppe's assertion that the record lacks any evidence that Timoneri provided NorthSteppe "in writing with a forwarding address or new address to which the * * * amount due from the landlord may be sent."   R.C. 5321.16(B).[3]   Timoneri supplied NorthSteppe with a forwarding address on the notice-of-tenant-replacement form, which she provided to NorthSteppe in January 2013. Additionally, Timoneri testified that in August 2013 she hand delivered to NorthSteppe the completed forms that NorthSteppe informed her it needed to refund her portion of the security deposit.   Timoneri testified that "one of [the forms] had my forwarding address." (Tr. 21.)

{¶ 40} NorthSteppe argues that it did not have to refund Timoneri's portion of the security deposit within the 30-day period because:   (1) it did not know whether the address provided in the notice-of-tenant-replacement form was valid and (2) Timoneri did not fill out the appropriate "moveout" form.   We are not persuaded by either of these arguments.   R.C. 5321.16(B) merely requires that a tenant give to the landlord a forwarding or new address in writing.   According to the evidence presented at trial, Timoneri satisfied this requirement.

{¶ 41} After reviewing all the evidence in the trial record, we conclude that sufficient evidence establishes that NorthSteppe violated R.C. 5321.16(B), while Timoneri complied with it.   Given this conclusion, as well as our conclusion that the trial court did not err in denying NorthSteppe summary judgment, we overrule NorthSteppe's first assignment of error.

---

[3] As we stated above, R.C. 5321.16(B) states that, "[i]f the tenant fails to provide the landlord with the forwarding or new address as required, the tenant shall not be entitled to damages or attorney fees under division (C) of this section."

{¶ 42} By NorthSteppe's second assignment of error, it argues that we should reverse the judgment in Timoneri's favor because the trial court erred in finding Timoneri's testimony credible. We disagree.

{¶ 43} Appellate courts review challenges to the credibility of the evidence under the manifest-weight-of-the-evidence standard. Under that standard, an appellate court engages in evidentiary weighing to determine whether the evidence underlying the judgment is competent and credible. *Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, at ¶ 15. " 'Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' " *Id.* at ¶ 14, quoting *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978). In considering whether a judgment is against the manifest weight of the evidence, appellate courts must give deference to the trial court's factual findings because "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 44} As we have explained above, to establish a violation of R.C. 5321.16(B), the tenant must show that the landlord failed to deliver the security deposit to the tenant within 30 days after termination of the rental agreement and delivery of possession. R.C. 5321.16(B). In order to recover damages and attorney fees under R.C. 5321.16(C), the tenant must also show that she provided the landlord with a forwarding or new address in writing.

{¶ 45} Here, the trial court found that the stipulated facts (along with the content of the documents referred to in the stipulation) proved NorthSteppe's liability under R.C. 5321.16. On appeal, NorthSteppe does not attack the credibility of the stipulations or documents the trial court relied upon to find liability. Rather, NorthSteppe challenges the credibility of the evidence underlying the trial court's finding that NorthSteppe ignored Timoneri's August 4, 2014 demand letter. NorthSteppe assumes that the trial court made that finding based on Timoneri's testimony that she never received her portion of the security deposit. According to NorthSteppe, this testimony is misleading because it suggests that NorthSteppe never took any action to return Timoneri's security deposit to

her.  In fact, states NorthSteppe, it took action on September 3, 2014 by drafting and mailing a check for $347.50 to Timoneri and, again, on September 18, 2014 by drafting a second $347.50 check and holding it for Timoneri to pick up.  NorthSteppe argues that, given these actions, the trial court erred in finding that it ignored the demand letter, and thus, we should reverse the trial court's judgment.

{¶ 46} We disagree with NorthSteppe's contention that Timoneri's testimony is misleading.  Timoneri testified only that she did not receive a refund of her portion of the security deposit; she did *not* state or imply that NorthSteppe never attempted to return the deposit to her.  Timoneri testified that, initially, NorthSteppe indicated that it would mail her a check for $347.50, but she did not receive that check.  On cross-examination, Timoneri readily admitted that her attorney later told her that NorthSteppe was holding a $347.50 check payable to her at its office.  Timoneri acknowledged that she had not retrieved that check.  Consequently, the trial court was aware of the steps NorthSteppe took to refund Timoneri's portion of the security deposit.

{¶ 47} Additionally, we disagree with how NorthSteppe interprets the trial court's finding that NorthSteppe ignored Timoneri's August 4, 2014 demand.  R.C. 5321.16(B) affords a landlord 30 days to return the money owed from the security deposit to the tenant.  The trial court, therefore, focused on the 30 days relevant to this case—July 15 to August 14, 2014—to determine if NorthSteppe was liable to Timoneri.  Undisputedly, NorthSteppe took no action during the relevant 30-day period to return Timoneri's portion of the security deposit to her.  By taking no action, NorthSteppe ignored Timoneri's August 4, 2014 demand that it comply with R.C. 5321.16(B).  Thus, the uncontroverted evidence supports the trial court's factual finding, giving us no basis on which to reverse the trial court's judgment.

{¶ 48} Next, NorthSteppe argues that the trial court should have disbelieved Timoneri's testimony because she previously worked for her attorney's law firm, she did not have a written retainer agreement with her attorney, and she did not pay any retainer fee.  As we stated above, the trial court found NorthSteppe liable based on stipulated facts and documentary evidence, not Timoneri's testimony.  Consequently, even if we discounted Timoneri's testimony, the remaining evidence would still justify a judgment in Timoneri's favor.  More problematically, NorthSteppe does not explain why the facts it

recites cast doubt on Timoneri's testimony, and we see no reason why those facts would render Timoneri's testimony suspect.

{¶ 49} In sum, we conclude that the manifest weight of the evidence supports the judgment in Timoneri's favor. Accordingly, we overrule NorthSteppe's second assignment of error.

{¶ 50} By NorthSteppe's third assignment of error, it asserts two arguments. First, NorthSteppe argues that the trial court erred in failing to apply the lodestar method of calculating reasonable attorney's fees. Second, NorthSteppe argues that the trial court erred in failing to provide adequate reasoning for its award of attorney fees. We disagree with both arguments.

{¶ 51} The amount of an attorney fee award is a matter within the trial court's sound discretion. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). An appellate court will not reverse a determination of attorney fees unless the appellant demonstrates an abuse of discretion and that " 'the amount of fees determined is so high or so low as to shock the conscience.' " *Id.*, quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91 (12th Dist.1985).

{¶ 52} Under the lodestar method of determining reasonable attorney fees, the trial court first multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Bittner* at 145. The trial court may then modify that amount by application of the reasonableness factors listed in Prof.Cond.R. 1.5(a). *Id.* (applying the predecessor to Prof.Cond.R. 1.5(a)); *Miller v. Grimsley*, 197 Ohio App.3d 167, 2011-Ohio-6049, ¶ 13 (10th Dist.). These factors include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer performing the services; [and]

(8) whether the fee is fixed or contingent.

Prof.Cond.R. 1.5(a)(1) through (8). The trial court has the discretion to determine which factors to apply and in what manner the factors will affect the amount of fees awarded. *Bittner* at 146.

{¶ 53} Here, NorthSteppe first contends that the trial court did not use the lodestar method to calculate Timoneri's reasonable attorney fees. NorthSteppe is mistaken. The trial court found that the amount of hours Timoneri's attorney expended on the case was reasonable, and it determined that $220 per hour was a reasonable hourly rate. Multiplying the hours expended by the hourly rate, the trial court arrived at $10,505. The trial court then found that the factors set forth in Prof.Cond.R. 1.5(a) did not provide a reason to vary the amount calculated under the first step. Consequently, the trial court did not err as alleged.

{¶ 54} Next, NorthSteppe argues that the trial court failed to provide adequate reasoning for its award of attorney fees. We disagree.

{¶ 55} A trial court must state the basis for the fee determination. *Bittner* at 146. An explanation of the trial court's reasoning is particularly important where the amount recovered is small compared to the attorney fees assessed. *Schultz v. Wardlow*, 10th Dist. No. 11AP-62, 2012-Ohio-3163, ¶ 25; *Whitestone Co. v. Stittsworth*, 10th Dist. No. 06AP-371, 2007-Ohio-233, ¶ 61.

{¶ 56} Contrary to NorthSteppe's assertion, the trial court elucidated why it did not lower the amount of attorney fees in light of the disproportionality between Timoneri's damages ($695) and the lodestar amount ($10,505). The trial court stated:

> This case presents a classic example of why the [L]andlord[-][T]enant [A]ct included a provision for attorney fees. The amount of the initial claim is relatively small, though not insignificant. Through her attorney, Plaintiff demanded

> return of her wrongfully withheld security deposit and nothing more, although it was noted in that demand letter that failure to timely refund her money would result in litigation, with the risk of double damages and attorney fees. Defendant chose to ignore the letter and force litigation, although the actual facts of the case, as presented in the stipulations[,] have not been in issue for some time.

(June 1, 2015 Jgmt. Entry at 2.)

{¶ 57} We find the trial court's explanation sufficient to justify its award of attorney fees. NorthSteppe failed to timely return Timoneri's security deposit to her even though she demanded the deposit within the 30-day window provided by R.C. 5321.16(B) and NorthSteppe never disputed the facts establishing its obligation to refund the deposit. After the 30-day window elapsed, NorthSteppe owed to Timoneri $695—the $347.50 wrongfully withheld plus $347.50 in damages. Although NorthSteppe took some action to return $347.50 to Timoneri, it never offered Timoneri the $695 due to her. This failure forced Timoneri to file suit and incur attorney fees.

{¶ 58} R.C. 5321.16 is a remedial statute intended to ensure that a tenant incurs no expense when seeking refund of a wrongfully withheld security deposit. *Klein v. Moutz*, 118 Ohio St.3d 256, 2008-Ohio-2329, ¶ 13, 17. To fulfill the purpose of R.C. 5321.16, Timoneri is entitled to the reasonable attorney fees NorthSteppe's actions forced her to incur in order to enforce her statutory rights. Consequently, we conclude that the trial court's reasoning adequately supports its award of attorney fees, even though those fees are disproportionate to the amount of Timoneri's damages.

{¶ 59} Beyond the two arguments addressed above, NorthSteppe challenges the trial court's conclusion that Timoneri's attorney expended a reasonable amount of time completing litigation tasks. NorthSteppe also contends that the trial court should have docked time the attorney spent pursuing the tort claims asserted in Timoneri's complaint. Both of these arguments exceed the parameters of NorthSteppe's third assignment of error.

{¶ 60} Pursuant to App.R. 12(A)(1)(b), courts of appeal must "[d]etermine [an] appeal on its merits on the assignments of error set forth in the briefs under App.R. 16." Thus, generally, courts of appeal will rule on assignments of error only, not mere arguments. *Thompson v. Thompson*, 196 Ohio App.3d 764, 2011-Ohio-6286, ¶ 65 (10th

Dist.).   Because NorthSteppe's arguments do not correlate with its third assignment of error, we decline to consider them.

{¶ 61} In sum, we find that the trial court applied the appropriate method for determining reasonable attorney fees, and that the trial court provided adequate reasoning for its attorney fee award.   Accordingly, we overrule NorthSteppe's third assignment of error.

{¶ 62} For the foregoing reasons, we overrule each of NorthSteppe's assignments of error, and we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

SADLER and LUPER SCHUSTER, JJ., concur.

_____